Argued March 24, decided June 1, rehearing denied July 13. 1909.

## SEABROOK v. COOS BAY ICE CO.

[102 Pac. 175: 102 Pac. 795.]

EJECTMENT—TRIAL—NONSUIT.

1. A motion for nonsuit in ejectment, on the ground that the evidence shows title only to tide lands, while the complaint describes land only below low tide, is properly denied, where the answer admits the premises are above low tide.

APPEAL AND ERROR—REVIEW—SUBSEQUENT APPEAL.

2. Where it was held on a former appeal that the defense of adverse possession was not sustained by the evidence, and the evidence on the second trial was no stronger in defendant's favor, that defense will not be further considered on the subsequent appeal.

BOUNDARIES—ESTABLISHMENT—EVIDENCE.

3. The rule that in government surveys the first lines and corners are only temporary, and, if the metes and bounds do not close, correction back is made by dividing the error and moving the lines and corners before they are made permanent, does not apply in retracting permanent surveys to the extent of moving established boundaries so as to include land not within the government survey, and in ejectment evidence of such rule and the map of the premises involved, made on such theory, are not admissible.

EJECTMENT—IDENTITY OF LAND—EVIDENCE.

4. Evidence *held* insufficient to identify an alleged strip of land between the true boundaries of two tracts according to government surveys.

BOUNDARIES—LOCATION—EVIDENCE.

5. The location of the beginning point of a survey would not be regarded as established by the testimony of a witness, who was present when the survey was made, as to his recollection of its location, after the lapse of thirty-four years.

BOUNDARIES—BEGINNING CORNER—LOCATION—EVIDENCE.

6. Evidence *held* to show that the northeast corner of a certain lot had not been properly located in the Whereat's survey, and could not, therefore, be taken as the starting point from which to locate an angle to which such survey was tied.

From Coos: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE EAKIN.

This is the second appeal of this action. For former appeal, see 49 Or. 237 (89 Pac. 417).

This is an action in ejectment to recover possession of the following described property:

"Beginning at the intersection of the south boundary line of block 66 of Nasburg's addition to the city of Marshfield, projected easterly with the easterly line of Front street, in said Nasburg's addition to the city of Marshfield, projected southeasterly; thence east to the harbor line of Coos Bay, established by the United States War Department, the same being east of the low-water mark in said Coos Bay; thence along said harbor line 58 feet; thence west to a point south of the place of beginning; thence north to the place of beginning, situated in Coos County, Oregon, and being tide lands."

Plaintiff's grantors, Lapp and Hall, acquired title thereto from the State of Oregon by a deed describing the same as follows:

"All of the tide land, lying in front of and abutting on lot 4, of Sec. 26, T. 25 S., R. 13 W., except that tract heretofore, on the 25th day of November 1874, sold to Charles E. Fox, and excepting also that tract sold to G. Webster, April 10, 1893." That the Fox tract referred to in said description is bounded as follows: "Beginning at the meander post or line between section 26 and 27, T. 25 S., R 13 W., Will. Mer., and running along the meander line south 58 degrees E., 22.30 chs.; south 51

degrees E., 10 chs.; S. 9 degrees E., 1.74 chs.; thence E. · 4.50 chs. to low-water line; thence along low-water line N. 9 degrees W., 1.74 chs.; N. 51 degrees W., 10 chs.; N. 45 degrees W., 20 chs; thence W. 8.50 chs. to place of beginning." And also the Webster tract referred to is bounded as follows: "Beginning 2.21 chs. northward from a post at angle in meander line of Coos Bay, said post being 7.50 chs. N., 17 degrees E. from the N. E. corner of lot 2 in Sec. 26, T. 25 S., R. 13 W., Will. Mer. and running northward along the meander line 16.75 chs.; thence E. ·4.50 chs. to low-water mark; thence southward along low-water line 16.75 chs.; thence west 4.50 chs. to place of beginning."

Plaintiff contends that there is a tract of land about 75.8 feet wide, lying between the Fox and Webster tracts, of which the ground attempted to be described in the complaint is a part and in the possession of defendant, and it is contended by defendant that the premises occupied by it are a part of the Fox tract. The principal witnesses are the surveyors who testify as to the boundaries of the Fox and Webster tracts. At the close of plaintiff's testimony, defendant moved for a nonsuit, which was denied, and at the close of the trial the court directed a verdict for plaintiff that he is the owner and entitled to possession of the property, and judgment was rendered thereon, awarding the same to him, from which defendant appeals.                                    REVERSED.

For appellant there was a brief over the names of *Mr. Edward L. C. Farrin, Mr. James Upton* and *Mr. Austin S. Hammond,* with an oral argument by *Mr. Hammond.*

For respondent the was a brief over the names of *Messrs. Coke & Seabrook,* with an oral argument by *Mr. Ephraim B. Seabrook.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. There are but two principal issues involved here: (1) Is there a tract of land between the Fox and Webster

tracts that may be included in the State deed to plaintiff's grantor? (2) As to the true location of the south line of the Fox tract. Defendant also pleads title by adverse possession. The grounds of the motion for nonsuit, relied upon, are: (1) That neither the pleading nor proof identifies the property described in the complaint with the property described in the deed to the plaintiff from his grantor, Lapp; (2) that plaintiff has only proved title to the tide land, namely, land above low tide, while it contends that the premises sought to be recovered are below low tide, therefore incorporeal, and not recoverable in ejectment.

Plaintiff's property is described in the complaint from the southeast corner of block 66 of Nasburg's addition to the city of Marshfield, and plaintiff offered in evidence a copy of the plat of that addition, evidently for the purpose of identifying the property described in the complaint. This plat contains no explanation of its contents, statement of survey, or reference to any government corner by which it can be located. There is a line thereon marked as the west line of section 26, townsship 25 S., range 13 W., but only a fraction of it. We might assume that a certain small red circle indicates the intersection of that line with the meander line of the bay, and we might assume that the south line of block 66 extended east is the south line of the Fox tract; but it would only be an assumption. There is nothing on the plat which would justify it, and the complaint in no way connects the property described with the Fox tract; but this defect in description is aided by the answer in which the defendant's property is described, evidently by reference to the same plat, and alleges that the lands described in the complaint are a portion of the lands described in the answer, and both descriptions are aided by the Whereat plat, and, in view of the fact that this is the second trial upon these pleadings, we will assume that the point of beginning of the description of the property

claimed by plaintiff, is intended by him to describe a point on the south line of the Fox tract, and that the north line of Delta street by which defendant describes its property is several feet south of the south line of block 66, and is also intended to describe a point on the south line of the Fox tract. The trial proceeded upon the theory that the south line of the Fox tract is the true line between the properties of plaintiff and defendant.

The answer concedes that the premises sought to be recovered are tide lands; defendant claiming title thereto by conveyance from the State, thus admitting that the premises in controversy are above low tide. The evidence therefore upon that question was immaterial, and the motion for nonsuit was properly denied.

2. As to the plea of adverse possession, on the former appeal we held that the proof was not sufficient to establish adverse possession, and the proof upon the second trial is no stronger in defendant's favor than at the first trial, and that plea need not be further considered.

3. A map, identified by witness Polley, was offered in evidence, but was excluded by the court, and Polley was not permitted to testify as to whether or not he found a tract of tide land between the Fox and Webster grants, and this is assigned as error. But Polley's survey of the Fox tract is based on the fact that the metes and bounds thereof, as set out in the deed from the State, do not close; the east line thereof being too great, and the distance in the last call of the survey being insufficient to reach the place of beginning. Therefore he swings the whole survey south and west to correct this error, by dividing the errors in the manner, as he says, the government permits correction back in sectionizing lands of the government; but in the public survey the first lines and corners are only temporary, and the result of the correction back becomes the permanent lines and corners; but such a rule cannot apply in retracing permanent surveys

to the extent of moving out established boundaries, so as to include territory not within the original survey, and Polley's map was drawn on the theory of this correction, and both it and his testimony based theron were properly excluded.

4. The evidence offered to establish the angle in the government meander line, to which the survey of the Webster tract is anchored, does not appear to be complete. The government meander line through section 26, as shown by the field notes, is 80.80 chains, viz: "From the meander post between sections 26 and 27; thence in section 26, S. 58 degrees E. 22.30 chs.; S. 41 degrees E. 15.00 chs.; S. 6¼ degrees E. 15.00 chs.; S. 17 degrees W. 15.00 chs.; S. 10 degrees W. 13.50 chs. to meander post between sections 26 and 35." The northwest corner of the Webster tract is 47.46 chains along the meander line northerly from the meander post between sections 26 and 35, and the west line of the Fox tract extends southeasterly from the meander post between sections 26 and 27, along the line of the survey of that tract is 34.04 chains, although diverging from the government meander line, making the whole line, without allowing for any vacant tract, 81.50 chains, which exceeds the length of the meander line .70 chains. Making allowance for the increased length of the west line of the Fox tract on account of its divergence from the government line, which will not exceed probably 15 or 20 feet, still it would overlap the Webster tract. Again, the witness Whereat locates the angle post to which the Webster tract is anchored from the northeast corner of lot 2 of section 26, alone, and has ignored the measurements and angles of the meander line in which this angle occurs. We stated in the former opinion "that the reference in the deed to the northeast corner of lot 2 is only as a witness corner to identfy and aid in finding the angle mentioned, and not to control it." It was not a government witness corner to that angle, but a reference by the

county surveyor to identify the government angle to which he anchored the Webster survey. The north line of lot 2 was an unsurveyed line and no part of the government survey. Its point of intersection with the west line of the section was unidentified, as well as its point of intersection with the meander line. Therefore, if 7.50 chains north 17 degrees E. from the point established by the witness as the northeast corner of lot 2, locates that angle more or less than 48.50 chains, according to the course of the meander line from the meander post between sections 26 and 35, then it cannot control. Measurements from the northwest corner of the section must also be consulted. Polley's testimony as to his location of that angle is indefinite. He refers to points and lines by pointing at the map, and pointing means nothing to one who is not present; but Mr. Seabrook's objection to Polley's map, states that there is a difference of 79 links (52.14 feet) between his point of location of that angle and that of Whereat, which would make a corresponding difference in the location of the northwest corner of the Webster tract, as there does not seem to be any other discrepancy between their surveys on that line. And taking this difference, as the result of Polley's survey, namely, placing the tie angle .79 chains northerly from Whereat's location of it, approximates very closely the point that appeared on the former trial as an angle in the government meander line, as ascertained by Whereat, which was shown both by his testimony and his map. It is stated in the former opinion (49 Or. 243 [89 Pac. 418]): "Whereat's survey or tracing is erroneous in adopting as a tie corner the point 63.9 feet southward on the meander line from the angle mentioned.

There is another view that convinces us that Whereat's starting point may be erroneous. By his map he locates the northwest corner of the Webster tract north 41 degreeś W. on the government meander line 261.36 feet (3.96 chains) from the second angle of the government

meander line southeast from the north corner of the section, and this is correct according to the deed. The distance from that point on the government meander line to the north corner of the section, according to field notes, is 33.34 chains. The west line of the Fox tract is 34.04 chains, being 70 links (46.2 feet) overlap.

We have made these figurse from the map and data found in the record, but they cannot control as against an actual survey on the ground. They are the data from which the survey must be made. To establish that there is any vacant land between the Webster and Fox tracts, it must be demonstrated that the actual measurement of the government meander line is more than 80.80 chains. This element has not been taken into account by Whereat, at least he has not given us the facts in relation thereto. Plaintiff is not entitled to recover until he has established his title, and the evidence does not justify a verdict in his favor for the whole property sued for.

Judgment will be reversed and the cause remanded.

REVERSED.

Decided July 13, 1909.

## ON PETITION FOR REHEARING.

[102 Pac. 795.]

MR. JUSTICE EAKIN delivered the opinion of the court.

But two points are urged in this motion: (1) That we should accept the location of the beginning point of the Webster survey upon the testimony of a witness who was present when the Webster claim was surveyed as to his recollection of its location; (2) that the court should determine the angle in the government meander line to which the Webster survey is tied, as being 7.50 chains north 17 degrees east from the northeast corner of lot 2 in section 26.

5. As to the first point, we cannot accept the recollection and testimony of a witness as to a surveyor's location

of a corner after a lapse of 34 years. That would hardly be a safe precedent.

6. As to the second point, we have nothing before us showing the manner or place of the location of the northeast corner of lot 2 as it was originally located by the county surveyor, who surveyed the Webster tract. He seems to have established a corner, and referred to that as a witness corner to identfy an angle in the meander line. Neither does it appear that the surveyors in the present case found or acted upon a monument established by the earlier survey; nor is there anything to indicate that a permanent monument had been established, or that there is any county record of the original survey establishing the northeast corner of lot 2. In other words, it does not appear that the northeast corner of lot 2, as now recognized by Whereat, is the same point mentioned in the Webster survey. The witness Whereat locates the northwest corner of lot 2 as 1,316.5 feet (19.986 chains) north 0 degrees 31 minutes west from the southwest corner of section 26. This, of course, must approximately correspond with the length of a line perpendicular from the south line of section 26 at its point of intersection with the meander line north to the north line of lot 2, from which, together with the course and distances of the meander line northerly from the section line, we can compute exactly the point where the north line of lot 2 intersects the meander line. We find that it will intersect the meander line at a point 6.94 chains north 17 degrees east from the first angle in the meander line north from the section line. The whole distance of that course to the second angle is 15 chains. This will make the distance from the northeast corner of lot 2 to the angle in the meander line, to which the Webster survey is tied, 8.06 chains, or about 56 links (36.96 feet), farther east than as located by Whereat. If we take Polley's measurement of the west line of lot 2, 1,305.71 feet (19.783 chains), it will make the distance from the

northeast corner of lot 2 to that angle 8.23 chains, and this indicates that the first survey of the Webster tract located the northeast corner of lot 2 at a different point than it is now located by Whereat.

These figures add additional strength to the features mentioned in the opinion, indicating that the northeast corner of lot 2 has not been properly located in the Whereat survey, and should not be taken as the starting point from which to locate the angle referred to. The writer does not make these figures to control any subsequent survey. They are based on the figures in the record, while a correct survey may produce different results. But with the points mentioned in the opinion they indicate that Whereat's location of that corner should not be accepted as final. We adhere to our former opinion.

Motion is denied.      REVERSED : REHEARING DENIED.