Argued on the merits April 8, decided July 13, 1909.

## FERRARI *v.* BEAVER HILL COAL CO.

[94 Pac. 181; 95 Pac. 498; 102 Pac. 175; 102 Pac. 1016.]

APPEAL—DEFECTS IN TRANSCRIPTS—CORRECTION—TIME.

1. Under rule 35, 20 Or. 587 (91 Pac. XII), providing that, for the purpose of correcting any defect in the transcript from the court below, either party may suggest the same, and on good cause shown obtain an order on the proper clerk certifying the whole or part of the record as may be required, an application for an order to supply the record will be granted, although not made until after the motion to dismiss the appeal has been submitted.

APPEAL—NOTICE—SUFFICIENCY.

2. Under Section 545, B. & C. Comp., providing that a notice is valid, though defective as to the name of the court, etc., if it intelligibly refers to the action, a notice of appeal which intelligibly referred to the action in which the appeal was taken was valid, though it was entitled in the Circuit Court of the United States for a certain county instead of in the circuit court of such county.

HOLIDAYS—JUDICIAL PROCEEDINGS—"JUDICIAL BUSINESS."

3. Under the statute providing that no court shall be open nor any judicial business be transacted on legal holidays, service of notice of appeal is not judicial business, and such notice may be served on a legal holiday other than Sunday.

APPEAL—MOTION TO DISMISS—QUESTIONS REVIEWABLE.

4. The Supreme Court will not on motion to dismiss an appeal review the action of the trial judge in permitting the undertaking on appeal to be filed after the expiration of the time allowed by law.

APPEAL AND ERROR—RECORD—AMENDMENT—AUTHORITY OF TRIAL COURT.

5. The trial court may, on application therefor, and notice thereof to the adverse party, make an alteration in the original bill of exceptions, provided the amendment is duly made, properly certified, and filed in the Supreme Court before the rendition of a decision on the merits.

EVIDENCE—FACTS AND CONCLUSIONS.

6. Where the complaint, in an action for injuries to a coal miner engaged in taking cars up and down an incline, alleged that the master negligently permitted the signal system used in the miner's work to get out of repair, and that the master was negligent in the manner of moving the cars on the incline, the testimony of the miner that the signal system was out of repair, and that the cars could have been let down the incline by steam power, stated facts, and not the conclusion of the witness.

APPEAL AND ERROR—OBJECTIONS—REVIEW.

7. Objections, to be available on appeal, must be on the ground on which the error is predicated.

MASTER AND SERVANT—INJURIES TO SERVANT—PROXIMATE CAUSE—EVIDENCE.

8. A servant suing for a personal injury, who introduces evidence of the defective condition of an appliance, as alleged in the complaint, must show that the injury might have been avoided if the appliance had been in repair.

APPEAL AND ERROR—QUESTIONS NOT RAISED BELOW—INSTRUCTIONS—REQUEST.

9. Though the evidence of a negligent act should have been taken from the jury, in the absence of a request therefor, no error could be predicated because of the failure to do so.

DAMAGES—PERSONAL INJURY—EVIDENCE—ADMISSIBILITY.

10. In an action by an infant for personal injury, his testimony as to the length of time he was able to work after the injury, and prior to the trial, was competent to show the extent of the injury and the probable effect it might have on his future earning capacity, though no damages could be assessed for loss of time during his minority.

APPEAL AND ERROR—HARMLESS ERROR—EVIDENCE—INSTRUCTIONS.

11. Where the court, in an action by an infant for personal injures, charged that no damages could be assessed for loss of time during minority, it would not be presumed that defendant was prejudiced by the testimony of plaintiff as to the length of time he was able to work after the injury and prior to the trial.

MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE OF SUBSEQUENT CONDUCT.

12. In an action for injuries to a coal miner while working on an incline, permitting the engineer, who had made a plat offered in evidence, to testify on cross-examination that guard rails had been placed on the incline since the accident, was not erroneous, where the court charged that the jury should not consider the evidence as proof of negligence.

NEGLIGENCE—EVIDENCE OF SUBSEQUENT CONDUCT.

13. Evidence of additional precautions or of subsequent repairs is not competent to prove antecedent negligence, but it may be competent as show-

ing that the property where the injury was received belonged to, or was in control of, defendant.

APPEAL AND ERROR—PREJUDICAL ERROR—REFUSAL OF INSTRUCTIONS.

14. Where, in an action for injuries to a coal miner while operating cars on an incline, the safety of the incline was not treated as an issue at the trial, and the testimony that the incline was in a reasonably safe condition was not questioned, the refusal to charge that there was no testimony that the incline was not built in the usual manner, etc., was not prejudicial.

MASTER AND SERVANT—OBLIGATION OF MASTER.

15. A master must point out the unusual and extraordinary risks of the employment, and call the attention of the servant to them, and warn him of the danger.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK.

16. An infant servant assumes the ordinary hazards and risks of his employment that he, through his intelligence, knows, or should know and appreciate, and he assumes the dangers that are so open and obvious that one of his age, capacity, and experience would, in the exercise of ordinary care, know and appreciate.

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLI-GENCE.

17. That a servant suing for personal injuries is immature in years and inexperienced in the work, is important in determining the question of his contributory negligence.

MASTER AND SERVANT—INFANT SERVANTS—OBLIGATION OF MASTER.

18. A master employing an infant inexperienced in the work must give him sufficient notice of the dangers incident to and attending the employment.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—FAILURE TO ADOPT RULES.

19. The question whether the master was at fault in failing to adopt suitable rules is not for the jury, unless there is something in the testimony from which the inference may be drawn that it was practicable to have provided against the occurrence of the accident complained of by such a rule.

MASTER AND SERVANT—INJURY TO SERVANT—FAILURE TO ADOPT RULES —NEGLIGENCE.

20. Whether a master was negligent in omitting to adopt suitable rules for the guidance of the servants, *held,* under the evidence, for the jury.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISKS— QUESTION FOR JURY.

21. Whether an infant coal miner assumed the risks incident to his employment, including the taking of defective cars to a shop, *held,* under the evidence, for the jury.

APPEAL AND ERROR—INSTRUCTIONS—REQUESTS—NECESSITY.

22. A party complaining of the instructions on the measure of damages, in an action for personal injuries, which correctly state the law as far as they go, must request additional instructions; and, in the absence of such request, he cannot urge omissions in the instructions as reversible error.

APPEAL AND ERROR—DISMISSAL AS TO CODEFENDANT.

23. A judgment against one defendant, in an action for negligence, treated during the trial as against such defendant alone, amounts to a dismissal as to

codefendant, within Sections 180, 181, B. & C. Comp., and defendant, interposing no objection, is not prejudiced thereby.

From Coos: JAMES W. HAMILTON, Judge.

This is an action by James Ferrari, a minor, by Rosa Ferrari, guardian of his person and estate, against the Beaver Hill Coal Company, a corporation, and Daniel Maher, one of its employees, to recover damages for an injury. From a judgment in favor of plaintiff, defendants appeal. On motion to dismiss appeal and counter motion on clerk to supply record.

MOTION TO SUPPLY RECORD ALLOWED.

Decided March 10. 1908.

MOTION FOR RULE ON CLERK TO SUPPLY RECORD.

[94 Pac. 181.]

*Mr. John S. Coke* for the motion.

*Messrs. Blake & Liljeqvist, contra.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. On February 3, 1908, a motion to dismiss the appeal in this case, on the ground that notice thereof had not been served or filed within the time required by statute, was, by stipulation of the parties, submitted on written briefs. Pending the disposition thereof, the appellants suggested to the court a diminution of the record, and asked for a rule on the clerk below to send up a notice of appeal, which, it is alleged, was served and filed within the statutory time, but which is not included in the transcript. The allowance of this motion is resisted because it comes too late, and reliance is had on *Cross* v. *Chichester,* 4 Or. 114; *Alberson* v. *Mahaffey,* 6 Or. 412; *State* v. *McKinmore,* 8 Or. 208. The technical rule announced in these cases that an application for permission to correct an error in the transcript must be made before the motion to dismiss the appeal is brought on for hearing, was practically overruled in *Elwert* v. *Norton,* 34 Or. 567 (51 Pac. 1097: 59 Pac. 1118) ; *Menden-*

*hall* v. *Elwert,* 36 Or. 375 (52 Pac. 22: 59 Pac. 805), and *Fleischner* v. *Bank of McMinnville,* 36 Or. 553 (54 Pac. 884: 60 Pac. 603: 61 Pac. 345), and the matter is now regulated by rule 35, 50 Or. 587 (91 Pac. xii), which provides that:

"For the purpose of correcting any error or defect in the transcript from the court below, either party may suggest the same, in writing, to this court, and, upon good cause shown, obtain an order that the proper clerk certify up the whole or part of the record, as may be required."

The court has for years adhered to a liberal practice in matters of this kind, so that neither party to an appeal shall be denied a right to be heard because of some defect in the transcript which can be cured.

The motion will, therefore, be allowed, and the rule issued as prayed for.

MOTION TO SUPPLY RECORD ALLOWED.

---

Decided May 12, 1908.

ON MOTION TO DISMISS.

[95 Pac. 498.]

*Messrs. Blake & Liljeqvist,* for the motion.

*Mr. John S. Coke* and *Mr. A. J. Sherwood, contra.*

PER CURIAM: This is a motion to dismiss an appeal, because (1) the notice of appeal is entitled in the circuit court of the United States for the county of Coos; (2) the notice was served and filed on a day appointed by the Governor as a legal holiday, and (3) the undertaking on appeal was not served and filed within the time required by law. None of these reasons are sound.

2. The notice of appeal intelligently referred to the action in which the appeal was taken and is valid and effective, notwithstanding the mistake in the name of the court in the title. Section 545, B. & C. Comp. That was evidently a mere clerical error, and does not affect the merits in any way.

3. A legal holiday, other than Sunday, affects only those acts and transactions which are designated in the law establishing the day.   The statute, providing for legal holidays, declares that no court shall be open nor any judicial business be transacted on such day, except for certain specified purposes, and under the rule above stated all other acts are legal.   Service of notice of appeal is not judicial business within the meaning of the statute, and such a notice may, therefore, be served on a legal holiday.   21 Cyc. 443.

4. The undertaking was not served and filed within time, but the judge of the court below, on motion of appellant, permitted such undertaking to be filed after the expiration of time allowed by law, and we cannot review his reasons for doing so on motion to dismiss an appeal.                                        MOTION DENIED.

---

Decided June 8, 1909.

## ON MOTION TO STRIKE OUT AMENDED BILL OF EXCEPTIONS.

[102 Pac. 175.]

*Mr. J. M. Blake,* for the motion.

*Mr. A. J. Sherwood, Mr. Ralph W. Wilbur,* and *Mr. John D. Goss, contra.*

PER CURIAM:

5. This is a motion to strike from the files an amended bill of exceptions.   After the cause was argued and submitted, but before an opinion had been written, or a decision rendered herein, the trial court, upon application therefor, and notice thereof to the adverse party, made at a subsequent term a *nunc pro tunc* order, changing in some particulars an instruction set out in the original bill of exceptions, so as to make the alteration correspond with that part of the charge as it was given to the jury.   The right of a trial court to make such an alteration, though denied in some other states, is settled

in Oregon (*State ex rel.* v. *Estes,* 34 Or. 196, 204 [51 Pac. 77: 52 Pac. 571: 55 Pac. 25] ; *Bloch* v. *Sammons,* 37 Or. 600 [55 Pac. 438: 62 Pac. 290]), provided the amendment is duly made, properly certified, and filed in this court before a decision on the merits has been rendered in the cause (*State* v. *Jennings,* 48 Or. 483, 493 [87 Pac. 524: 89 Pac. 421]).

The amended bill of exceptions having been prepared, authenticated, and sent up according to the manner, and within the time indicated, the motion is denied.

MOTION DENIED.

Decided July 13, 1909.

ON THE MERITS.

[102 Pac. 1016.]

Statement by MR. JUSTICE KING.

This is an action by James Ferrari, a minor, by his guardian, against the Beaver Hill Coal Company and Daniel Maher, one of its employees, for damages arising from an injury received while in its employ.

Plaintiff at the time of the injury was engaged in the occupation of what is termed a "trip rider" or "rope rider," on the surface incline of the mine of the defendant company, and his duties consisted in taking cars up and down the incline trestle leading from the yard at the mouth of the mine, to the platform at the head of the incline, and just above what is called the "bunkers and washers," into which the coal is dumped from the cars. The incline or trestle was about 250 feet long and rose at an angle of about 30 degrees from the horizontal, the top of which was about five feet in width, and in some places 30 feet or more from the ground. The cars were lifted from the track below the platform by means of a hoisting apparatus, consisting of an engine, drum, and cable, operated by steam power when used to bring loaded cars up the incline, but which was allowed to run loose when cars were lowered to the surface tracks

beneath, except loaded cars were drawn up the incline, when steam power was used. Plaintiff in the regular performance of his duties, would attach the cable to the head car of a string or train of cars loaded with coal, mount them, signal the engineer in charge of the hoisting engine to pull the same up the incline, and ride upon them to the platform above the bunkers, at which point it was his duty to detach the cable from the cars, and attach the same to the rear of the string or train of empty cars, which would then be lowered on the incline to the yard. In lowering the cars, except when operated by steam power, the drum is entirely controlled by a brake, consisting of two wooden blocks with shoes set against the flanges on the outside of the drum, and operated by a foot lever. The engine is reversible, and the cars without much inconvenience can be let down by steam, but this was not the method used in lowering them. When the cars were discovered to be defective, they were set out on the side track on the bunker platform, and from time to time lowered to a point near the foot of the incline, where they were switched onto a track leading to the carpenter or repair shop, and it was a part of plaintiff's duties to have charge of the defective cars when sent to the shop for repair.

Plaintiff at the time of the accident was a minor, nearly fifteen years of age, had worked for defendant several months, but had been occupying the position of trip rider only about four weeks prior to the accident, for which damages are sought. On the day before the accident a broken flange was discovered in the left front wheel of one of the cars, whereupon the car was set aside and marked "shop," indicating that it should go to the shop for repairs. Plaintiff was ordered to switch this car upon the track leading to the shop, and was told that a cotter pin, or pin holding the wheel in place, was missing, but was not informed of the broken flange. Pursuant to these directions he switched the car upon

the track, attached it to the other five cars, and started down the incline, taking his usual position upon the left-hand corner of the rear car. When the trip was about halfway down the trestle, he observed the dump car, containing the defective wheel, jump from the track and leave the rails, the left front wheel first coming off, whereupon he immediately signaled to the engineer to stop, dismounted, and immediately proceeded to descend upon the right-hand side of the trestle, climbing down one of the posts towards the ground. After moving about 45 feet the broken car left the track, carrying the others with it, taking the cable attached to the rear car over with them, the cable catching plaintiff's right foot, throwing him to the ground, and injuring the foot to such an extent as to require its amputation.

The complaint contains the usual averments, practically all of which were denied, but those upon which the case was contested and material to an understanding of the questions here presented were: That at the time of the accident plaintiff was not fifteen years old, and that while in defendant's employ as a "rope rider" or "trip rider," the accident mentioned occurred; that the accident was occasioned through defendant's gross negligence in failing to provide for him a suitable place to work; that defendant company in addition thereto, disregarding its duty to promulgate rules and regulations for the guidance and control of its employees in and about the bunkers, washer, platform, incline, trestle, engine, and hoisting apparatus, negligently, and without exercising reasonable and ordinary prudence and care for the safety of plaintiff, operated the defective hoisting apparatus and appliances in connection with, and for the purpose of, raising and lowering the coal cars upon which plaintiff was riding on the incline and trestle from which they were conducted, and negligently, and without exercising reasonable and ordinary prudence and care for the safety of plaintiff, allowed the signal system, originally installed

by defendant, and used in cennection with plaintiff's part of the work, to get out of repair and to become useless; and that said company was also knowingly grossly negligent and careless in its manner of moving the cars down the incline, and, in wanton disregard of human life, commanded plaintiff to take down the incline a string of five cars, more or less, the front car of which it, through its employees, knew was dangerously defective, thereby, in the manner stated, subjecting and exposing plaintiff to unreasonable and unnecessary danger and hazard; and that by reason of the dangerous condition of the cars, and other careless acts mentioned, and insufficient incline or trestle, including a failure to provide the necessary rules, and failure to inform plaintiff of the dangers and hazards of his undertaking, he was injured and damaged in a manner specifically alleged.

The company answered, denying in detail the above averments, and affirmatively averred: That plaintiff at the time of and during his employment, and prior to the date of the accident, had been, and was, fully informed and instructed concerning his duties and the order and manner of their performance; that the accident occurred wholly by reason of the fault, carelessness, and negligence of plaintiff; that immediately prior to the time of the accident he had been continuously for a period of seven months in the employ of defendant company, was familiar with all the duties pertaining to his employment and fully instructed in regard to the methods of performing the same, was a competent and intelligent person, and could, by reasonable exercise of his faculties, understand and appreciate, and did understand and appreciate, all the risks and dangers incident to his occupation, and accepted his employment with full knowledge thereof; that it was a part of his regular duties to remove defective cars from the platform or washer above, and let them down the incline trestle and transfer them to defendant's shop for repairs; that all such cars were, immediately upon

discovery of their condition, plainly marked so as to indicate that they were to be repaired, and it thereupon became plaintiff's duty to remove the same from the platform carefully, and with due regard to their defective condition, and to take the same over the trestle to defendant's repair shop at the foot of the incline; that he was fully competent to know, understand, and appreciate the dangers and risks, and did know, understand, and appreciate the dangers and risks of performing this work; that when the accident and injury complained of occurred, plaintiff was engaged in letting down said incline, together with cars in good condition, a broken and defective car, the defect in which consisted of the loss or absence of a cotter pin from the right end of the front axle, thus leaving the wheel upon the end of the axle free to slip therefrom and become disengaged; that the defect was plain, visible, and apparent, and the risks and dangers in moving the same were obvious, and could have been discovered and known to plaintiff by due exercise of his faculties, and was so known, appreciated, and understood by him; that plaintiff, knowing these facts, undertook the work, and at that time had full knowledge of the defect which caused the accident; that plaintiff, upon observing the cars were falling, or about to fall, from the track or trestle, stepped from the car upon which he was standing to and upon the plank walk provided for such purposes upon the trestle, and placed himself in a position of safety and security, but afterwards voluntarily, and for no good reason or excuse, stepped over the cable attached to the cars into a position of obvious and extreme danger, and while unnecessarily in such position sustained his injuries.

Upon these issues, with others not mentioned, concerning which there was finally no controversy, the cause was tried, resulting in a verdict and judgment in plaintiff's favor and against the Beaver Hill Coal Company (herein referred to as "defendant"), for $6,000, from which it appeals.      AFFIRMED.

For appellant there was a brief over the names of *Mr. John S. Coke, Mr. A. J. Sherwood, Mr. Ralph W. Wilbur,* and *Mr. John D. Goss,* with oral arguments by *Mr. Wilbur* and *Mr. Goss.*

For respondent there was a brief over the names of *Messrs. Blake & Liljeqvist,* and *Mr. Francis H. Clarke,* with oral arguments by *Mr. J. M. Blake* and *Mr. Clarke.*

MR. JUSTICE KING delivered the opinion of the court.

One of the principal errors assigned and relied upon at the argument was based upon an alleged refusal of the court to instruct the jury that it was only incumbent upon defendant company to provide "reasonably" safe machinery, and a reasonably safe place in which to work, relative to which it was insisted that, since the main instructions on the subject, appearing in the bill of exceptions, did not contain this qualifying word, error prejudicial to defendant was disclosed thereby. Pursuant to the subsequent holding by this court, denying the motion to strike from the files the amended bill of exceptions in this case (102 Pac. 175), the bill as amended is before us, disclosing that the instruction covering this point was given at the trial, thereby eliminating this feature from the case.

6. It is first maintained that the court erred in permitting plaintiff to testify that during the period of his employment as trip rider, and at the time of the accident, the signal system was out of repair, having reference to the system of communication between the engineer controlling the cars and the trip rider, also in allowing plaintiff to testify that the cars could have been let down by steam power, thereby enabling the engineer to retain such control of the trip as would have prevented the cars from running off the track. It is argued in support of this contention that this character of interrogatories called for the conclusion of the witness upon the issues involved. The evidence apparently sought by this line of inquiry was relevant to the issues upon the subject

to which questions were directed, and the testimony was accordingly competent for that purpose, and, when viewed from that standpoint, was calling for the facts.

7. Sufficient foundation, however, was not laid therefor; such, for example, as first showing that the witness had sufficient knowledge of the subject to entitle him to give evidence thereof, but no objection appears on either that ground, or that the question propounded called for the conclusion of the witness, from which it follows that error cannot be declared thereon. Objections, to be available on appeal, must be upon the ground upon which the error is predicated. 9 Enc. Ev. 100-106; *Hilderbrand* v. *United Artisans,* 50 Or. 159, 166 (91 Pac. 542).

8. The testimony relative to the signal system being out of order it is also argued should have been taken from the jury, for the reason that it conclusively appears that its condition could in no way have contributed to the accident. This question was only raised through objections made to the testimony. It is clear, since this feature was made one of the issues in the pleadings that, in the first instance, evidence bearing on this subject was competent. However, for plaintiff to have availed himself of any negligence in this respect, if any, and to have entitled the testimony offered to be considered by the jury, it was incumbent upon him to follow it up with evidence tending to show that the injury might have been avoided by the use of this system of signaling, if it had been in repair, but it clearly appears, from the testimony adduced by defendant, that this system was only used, and only intended to be used, at nighttime, and on occasions, such as foggy weather, etc., when it was difficult, if not impracticable, for the engineer to see the trip rider.

9. No attempt is made to question this showing, and plaintiff in fact admits that signaling by the use of the hands was the better method. This testimony, therefore, should have been taken from the jury; but, in the absence

of a request to that effect on the part of the defendant, no error can be predicated thereon. In fact error is not assigned upon that ground.

10. Error is next based upon the ruling of the court in permitting plaintiff to testify concerning the length of time he was able to work after the injury occurred, and prior to the time of the trial. This testimony was competent for the purpose of showing the extent of the injury, and the probable effect it might have upon his future earning capacity, for which purpose it was evidently offered.

11. The court expressly instructed the jury to the effect that no damages could be assessed for any loss of time during plaintiff's minority, it cannot be presumed that it was in any manner prejudiced thereby. *Winter* v. *Central Ia. Ry. Co.,* 80 Iowa 443, 446 (45 N. W. 737) ; *Contant* v. *Suburban Ry. Co.,* 125 Iowa 46, 53 (99 N. W. 115: 69 L. R. A. 982).

12. The next contention relates to the answer elicited on cross-examination of defendant's witness, who was a civil engineer, and made the plat offered in evidence, to the effect that guard rails had been placed upon the trestle or incline since the accident. It is argued in this connection that, since the changes in the machinery, appliances, and place of work subsequent to the accident cannot be shown, the answer should not have been admitted in evidence; that the impression upon the jury necessarily created by the "undue importance invariably attached thereto by the average juror, and his inevitable tendency to regard such changes as a confession of prior negligence," remains with the jury, to defendant's prejudice, despite any instructions from the court to the contrary.

13. It is well settled that evidence of additional precautions or of subsequent repairs is not competent for the purpose of proving antecedent negligence (*Skottowe* v. *Oregon S. L. Ry. Co.,* 22 Or. 430, 438 [30 Pac. 222:

16 L. R. A. 593]) ; but it is equally as well established, however, and recognized by the authority last cited, that it may be competent for some other purpose, such, for example, as a circumstance tending to show that the property where the injury was received belonged to, or was in the control of, defendant, and we think the purpose for which this answer was elicited comes within, that rule. The witness was merely testifying to the accuracy of the map, and for the purpose of determining whether the map represented the property at the time of the accident, or after that time, the question was proper, and the inquiry appears to have been made for no other purpose; and, having been guarded by the proper instructions to the jury on the subject, to the effect that they should not consider it as being any evidence of negligence, no error can be predicated thereon. In any event that evidence, as well as the testimony regarding the subsequent lengthening of the brake lever, was competent for the purpose for which testimony of like import was admitted in the case last cited.·

14. Complaint is made because the court refused an instruction, requested by defendant, that:

"There is no testimony that this incline was not built and maintained in the usual manner, and there is no testimony that would warrant you in holding that defendant was negligent in the. manner of constructing and maintaining this incline trestle."

While the safety of the incline was made an issue by the pleadings, defendant offered testimony, the purport of which was to show that the incline was in a reasonably safe condition, and this fact is in no manner attempted to be questioned by the plaintiff, further than the testimony respecting the guard rails having been constructed since the accident, which testimony was offered for another purpose, and, as hereintofore stated, was by the court properly guarded by instructions upon the subject. There is nothing in the record tending to

show that this was treated as an issue at the trial, further than an averment in the complaint bearing upon the subject. It is difficult, therefore, to understand how the defendant could, in any manner, have been prejudiced by the court submitting this question to the jury. The court might properly have instructed that there was no controversy upon this issue, and that they should be governed accordingly; but, as stated, its failure to do so, it is clear in no way worked to defendant's prejudice. If error at all, it would not justify a reversal.

15. It is next contended that the court erred in refusing to give the following instruction, requested by defendant:

"If you find that the plaintiff was of sufficient age and intelligence to understand and appreciate the dangers of his employment, and it was a regular part of said employment to let defective cars down said incline to the repair shop, and the accident occurred through a defect in one of said defective cars, whether said plaintiff knew of said defect or not, said accident was one of the risks of the business which plaintiff assumed, and you must find for the defendant."

On this phase of the case the court instructed:

"You will observe, gentlemen of the jury, that this is a question of fact for you to determine in this case as to whether or not this was a dangerous vocation in which the plaintiff was engaged, and, if so, whether the nature of his employment, whether the work in which he was engaged, belonged thereto, or was required of him thereby, or whether it was an extraordinary risk or not. You will notice that the law makes a distinction as to the risks and hazards that are extraordinary, and not the usual risks of his employment. It is the duty of the master to point out those which are unusual and extraordinary, and call the attention of the employee to them and warn him of his danger.

16. "So it is that a minor assumes the ordinary hazards and risks of his engagement that he through his degree of intelligence knows, or should know and appreciate, and consequently he assumes these dangers also that are so open and obvious to his senses that one of his age, capacity, and experience would, in the exercise of

54 OR.——8

ordinary care and prudence, common to persons of like age and experience, know and appreciate, and would be expected to be sufficiently attentive and alert to avoid. In other words, the minor's assumption of the hazards and dangers incident to his employment is to be determined by his capacity to know, understand, and appreciate them, and his caution, alertness, and aptitude as well, to avoid them. In that regard you have the right to consider the witness and his ability as to alertness and capacity, and that, of course, gentlemen of the jury, is a question for you to determine as to the facts, as to what was the nature of his employment, what was the nature of his work and what was the hazard and risk, applying the law as I have given it to you, and the law as I have given it to you is the standard by which the plaintiff is to be judged, as to whether or not he assumed the risk of this employment with a knowledge of the defects, and is thereby prevented from recovering in this action. * *

17. "A minor assumes the ordinary risk of any employment which he undertakes, in so far as the risks are, or ought to have been, appreciated by him, whether the source of his knowledge is by information, observance, and experience, or by instructions that he had received. The fact that the plaintiff was a minor does not enlarge his rights, if you find that he understood, or should have understood, the danger. This is to be taken in connection with what I have already instructed you in regard to the law applicable to a minor."

The instruction requested was properly refused. The instruction, so far as given by the court to the jury, fully and clearly states the law upon the subject, and was sufficient to enlighten the jury on the question, and enable them to correctly apply the facts presented to the law governing the case, except that the instruction should have also made it clear that it was the duty of the master to have instructed the plaintiff as to the dangers incident to his employment, etc., but it is obvious this omission is one concerning which the plaintiff alone would be in position to complain. It is fully and clearly established, under the repeated and uniform holdings of this court, that where the employee is immature in

years, and is inexperienced in the work in which he is employed, that feature becomes of importance in determining the issue as to whether contributory negligence may be imputed to him.

18. It is too well settled to justify any further elucidation thereof that, under such circumstances, it becomes the employer's duty to give the minor sufficient notice of the dangers incident to and attending his employment, which was not done in the case under consideration. For a full discussion of the subject enunciating the above rule, see Barrows, Negligence, 119; *Gibson* v. *Oregon S. L. Ry. Co.*, 23 Or. 493, 496 (32 Pac. 295) ; *Westman* v. *Wind River Lum. Co.*, 50 Or. 137, 141 (91 Pac. 478) ; *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619).

19. The next question presented, and the one more difficult of solution, concerns the submission to the jury of the question whether the company's failure to provide rules for the guidance of its employees might be taken into consideration by the jury as negligence on its part. In *Wagner* v. *Portland*, 40 Or. 389, 405 (60 Pac. 985: 67 Pac. 305) the law upon this subject is clearly and concisely stated by Mr. Justice WOLVERTON thus: "The question whether the defendant was at fault in omitting to adopt suitable rules is not one for the jury, unless there is something in the testimony from which the inference may be drawn that it was practicable to have provided against the occurrence of the accident complained of by such a rule. The court say in *Texas & N. O. Co.* v. *Echols,* 87 Tex. 339, 343 (27 S. W. 60: 28 S. W. 517) : 'Whether or not the evidence is sufficient to show a case in which the duty to make rules rested upon the defendant is a question of law for the court. If the facts raised that issue, it should have been submitted to the jury; otherwise it should not.' It may occur that the necessity and propriety of making and promulgating rules in a given case are so obvious as

to make the matter one of common experience and knowledge. Such a condition would warrant a submission of the question as to whether the defendant was at fault in omitting its duty in this regard to the jury without evidence."

20. The question then arises; Has plaintiff brought himself within the rule as thus announced? It appears from the testimony that after plaintiff had, three times in rapid succession, signaled to the engineer to stop the cars, he jumped therefrom, and immediately proceeded to descend by climbing down the framework of the trestle, after which the cars ran about 45 feet, when the broken car, carrying with it the other cars and cable attached thereto, went over the trestle, resulting in the injury complained of. It is also apparent that the company could let the cars down by steam power, which was used for heavy loads only, and could thereby have let them run more slowly, and by that method have retained greater control over them than by the use of the brake for that purpose. It would seem that, owing to the difficulties reasonably to be expected in lowering damaged cars to the repair shops, and dangers necessarily incident thereto, the company might by rules have provided a method of inspection more conducive to the safety of its employees than the one in use, including therein ample notice to coemployees of any defects discovered, and some manner of lowering defective cars with greater caution, and with a corresponding degree of safety. The evidence discloses that the work involved many complications, and the risk incurred in plaintiff's occupation to be hazardous, possibly not to such an extent as to justify the court, as a matter of law, in holding the adoption of rules necessary, but such conditions as reasonable minds might draw diffierent inferences therefrom as to the necessity therefor, making the question as to whether such rules were reasonably necessary one for the jury. Bailey's Master's Liability, 72-75; *Hartwig*

v. *N. P. L. Co.*, 19 Or. 522 (25 Pac. 358) ; *Knahtla* v. *O. S. L. R. Co.*, 21 Or. 136, 143 (27 Pac. 91) ; *Mast* v. *Kern*, 34 Or. 247, 251 (54 Pac. 950: 75 Am. St. Rep. 580) ; *Rush* v. *Oregon Power Co.*, 51 Or. 519 (95 Pac. 193) ; *Crawford* v. *United Rys. & Elec. Co.*, 101 Md. 402 (61 Atl. 287, 291: 70 L. R. A. 489) ; *McGovern* v. *Central V. R. Co.*, 123 N. Y. 280, 289 (25 N. E. 373).

21. It is argued in this connection, however, that plaintiff assumed the risks incident to his employment, which included the taking of the defective and injured cars to the shop, and that he knew the flange was broken, and that the cotter pin was missing, constituting such defects that the danger thereto was apparent to anyone, including one of his age and experience, by reason of which it is argued that plaintiff's negligence in not placing a pin in the axle to hold the wheel was the proximate cause of the injury. But plaintiff testifies that he had no knowledge of the broken flange which the evidence discloses was upon the wheel where the linch pin was missing, and it further appears that it was nothing unusual to run the cars with the cotter pin missing; the cars in such cases being held upon the track with a reasonable degree of safety by the flange of the wheel. The wheel probably came off as a result of the broken flange, of which plaintiff, as stated, had no knowledge. It is also clear that the car was not sent to the shop on account of the missing pin, but because of the broken flange. Under the showing made these were question for the jury, and the cause was properly submitted to them.

22. It is also maintained that the court erred in not instructing the jury that the measure of damages in these cases is the difference between the earning capacity of the injured party before and after the accident, and not by what has been actually earned since the injury was received. The court instructed extensively on this subject, and, so far as given, correctly stated the law

*(Ridings* v. *Marion County,* 50 Or. 30: 91 Pac. 22). and, while the instruction to the effect suggested, if it had been added thereto, would probably have conveyed to the jury a more comprehensive knowledge of the law applicable, the bill of exceptions does not disclose that an instruction bearing on this phase of the case was requested, in the absence of which defendant cannot on appeal urge its omission as reversible error. *Beadle* v. *Paine,* 46 Or. 424 (80 Pac. 903).

23. Concerning the last point presented, it is urged that it was error to enter judgment against one of the defendants. In this connection the instructions given, as well as those tendered but refused, together with the conduct of the trial throughout, treats the Beaver Hill Coal Company as the defendant against which the negligence is charged and the damages claimed, and no objection was interposed at the trial, nor until heard in this court, as to the procedure in that respect. The judgment against the Beaver Hill Coal Company amounted to a dismissal as to Daniel Maher, and appellant is in no way prejudiced thereby. Sections 180, 181, B. & C. Comp.; Cooley, Torts, 145; *Krebs Hop Co.* v. *Taylor,* 52 Or. 627 (98 Pac. 494) ; *Davis* v. *Taylor,* 41 Ill. 405; *Illinois C. R. Co.* v. *Foulks,* 191 Ill. 57, 71 (60 N. E. 890).

Finding no error in the record prejudicial to appellant, the judgment of the circuit court is affirmed.

AFFIRMED.