Argued 23 July ; decided 11 August, 1902.

### GOLTRA v. PENLAND.

[69 Pac. 925.]

FORM OF CLAIM AGAINST ESTATE.

1. There being no statutory form for a claim filed with a personal representative against a decedent's estate, such a claim is sufficient if it shows a subsisting liability in favor of the claimant and is verified according to the statute; and it is not necessary to set out therein the evidence upon which the claimant expects to recover if action thereon shall become necessary.

INFERENCE FROM ADMITTED FACTS.

2. In an action for conversion' of sheep, evidence that in June defendant had in his possession sheep belonging to plaintiff which he (defendant) agreed to care for on shares for a year from that date, and that in the following November he sold all the sheep on a certain range on which he was accustomed to run his sheep, was, in the absence of evidence that he had sheep at any other place, sufficient to take the case to the jury on the question of conversion.

CONVERSION—EVIDENCE OF VALUE.

3. One who has acquired possession of personal property which he refuses to return, and by his conduct prevents the owner from showing the true value thereof, is liable for the value of ordinary property of the kind converted, in the absence of proof by the bailee of the actual value.

ACCOUNTING—EVIDENCE OF UNSETTLED CLAIMS.

4. Where the complaint in an action for the conversion of sheep alleged that prior to a certain date defendant had in his possession a band of sheep which he was keeping for plaintiff on shares, and that on such date they had a settlement, in which the number of sheep owned by plaintiff was ascertained, it was competent for plaintiff to show that defendant had retained possession of the band of sheep up to the date of the settlement, and that on such date there was an unliquidated, unsettled claim between him and defendant, growing out of previous transactions, as explanatory of the settlement.

From Morrow : W. R. ELLIS, Judge.

This action was originally brought by Hugh Fields against the executrix of the estate of William Penland, deceased, to recover $10,306, the value of certain sheep alleged to have been converted by Penland to his own use. After Penland's death, Fields presented to the executrix for allowance a claim for the value of the sheep in question, in the following form :

In the County Court of Morrow County, State of Oregon.
In the Matter of the Estate of
William Penland, Deceased.
The Estate of William Penland, Deceased, Dr.,
to Hugh Fields, 1901.

| | | |
|---|---|---|
| To the value of 2,888 ewes at $3 per head | $ 8,664 | 00 |
| To 821 yearling lambs at $2·per head | 1,642 | 00 |
| Total | $10,306 | 00 |
| Interest on same from December 1, 1900, at 6 per cent | | |
| Total | $ | |

"State of Oregon, County of Morrow—ss.: I, Hugh Fields, being first duly sworn, depose and say: That William Penland, deceased, during his lifetime, and for several years previous to his death, had in his possession and on shares one band of ewe sheep, my property; that in the month of June, 1900, a settlement was had between me and said William Penland, and at said time the said William Penland had in his possession, belonging to me, 2,888 ewes and 821 yearling lambs, and it was agreed between me and the said William Penland that the said William Penland should run said band of ewes and lambs for another year from said time; that since said time, and during the month of November, 1900, the said William Penland, without my knowledge or consent, wrongfully and unlawfully sold and disposed of said ewes and said lambs, and all of them, and converted the same to his own use, and said ewes were at the time of said sale of the value of $3 per head, and said lambs were at the time of said sale of the value of $2 per head, making a total of $10,306 due me for said ewes and lambs from the estate of William Penland, deceased, with interest thereon at the rate of 6 per cent per annum from December 1, 1900; that no part of the same has been paid; that there are no offsets or counterclaims against the same.                          HUGH FIELDS.''

"Subscribed and sworn to before me this 18th day of April, 1901.          ·          C. E. REDFIELD,
[Seal.]                              "Notary Public.''

As the claim was not allowed, this action was brought, and on November 12th, an amended complaint filed, alleging, in substance, that for several years prior to the first day of June, 1900, Penland had in his possession a band of ewe sheep, the property of plaintiff, which he had been caring for on shares;

that on June 1, 1900, he and the plaintiff had an accounting and settlement in reference to such sheep, wherein it was ascertained and agreed by and between them that Penland then had of such sheep and their increase 2,888 ewes and 821 yearling lambs, which it was agreed he should keep and care for on shares another year, when he was to return them to the plaintiff, together with a share of the wool and increase; that in pursuance of such agreement he retained possession of the sheep until November, 1900, when, without the knowledge or consent of the plaintiff, he wrongfully and unlawfully sold and disposed of them, converting the proceeds to his own use, to the plaintiff's damage in the sum of $10,306. The answer denies all the material allegations of the complaint, except the death of Penland and the defendant's appointment and qualification as executrix, and for an affirmative defense alleges that in the fall of 1897 Penland had in his possession about 800 sheep belonging to the plaintiff, which at the latter's request he sold and disposed of, and settled for the proceeds in full. Before the issues were made up Fields died, and W. H. Goltra, who was appointed executor and substituted as plaintiff, filed a reply, denying the material allegations of the answer. Upon the issues thus joined a trial was had, and at the close of the testimony the court, on motion of the defendant, struck out all the evidence as to the value of the sheep, except that of Fields, and directed a verdict in favor of the defendant, on the ground that the evidence was insufficient under the statute. From the judgment rendered in favor of the defendant on the verdict so directed, plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *C. E. Redfield* and *Hewitt & Sox,* with an oral argument by *Mr. Henry H. Hewitt.*

For respondent there was a brief over the names of *G. W. Phelps* and *Huntington & Wilson,* with an oral argument by *Mr. Phelps* and *Mr. H. S. Wilson.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. In support of the ruling of the trial court in directing a verdict it is argued that there is a fatal variance between plaintiff's claim as presented to the executrix for allowance and his cause of action set out in the complaint. But we are unable to concur in this position. The claim was for 2,888 ewe sheep and 821 yearling lambs converted by the deceased to his own use, of the alleged value of $3 a head for ewes and $2 for lambs, and the action was prosecuted for the same demand. The fact that the verification of the claim does not state the circumstances out of which the liability arose with the same particularity as required in a complaint is no objection to its introduction in evidence in this action. The statute neither provides nor requires any particular form for a claim against the estate of a deceased person. It is sufficient if the claim as presented shows a subsisting liability in favor of the claimant and against the estate, and is verified in accordance with the statutory requirements. The facts constituting the claim need not be set out with the particularity required in a pleading, but may be .stated in general terms; and if the claim is rejected, and an action is brought thereon, it is sufficient if it appears that it is founded on the same claim or demand as that presented to the administrator or executor. In *Wilkes v. Cornelius,* 21 Or. 348 (28 Pac. 135), the plaintiff presented a claim to an executor for allowance based on the ground of liability, and sought on the trial to recover on another. But that case affords no precedent in this instance, as here the claim presented and the one sued on are the same. Each is for the value of a certain number of sheep, alleged to have been converted by the defendant's testator to his own use; and it is immaterial that the claim presented to the executrix did not set out the evidence upon which the plaintiff expected to recover.

2. It is further insisted that there was no evidence of the alleged conversion, other than that of Fields. His testimony and that of another witness is undisputed that on June 1, 1900, Fields and the defendant's testator had a settlement

and accounting of differences between them which had grown out of the previous leasing of sheep, at which time it was understood and agreed that Penland then had in his possession of such sheep and their increase the number mentioned in the complaint, which he agreed to retain and care for on shares another year from that date. In the following November Penland sold and disposed of all the sheep upon his range to the Penland Live Stock & Land Co., a corporation organized at that time. There is no direct testimony, save his own, that Field's sheep were on the range at the time of the sale; but in our opinion it is a fair inference from the evidence. It was shown that there is a particular section of the country known as the "Penland Range," where he was accustomed to run his sheep. There was no evidence that he had sheep at any other place. The testimony, therefore, that in June, 1900, he had in his possession sheep belonging to Fields, which he agreed to care for on shares another year, and that in November he sold and disposed of all the sheep on his range, furnished a reasonable inference that the plaintiff's sheep were included in the number disposed of. We think, therefore, there was sufficient evidence, independent of Fields' testimony, to carry the case to the jury upon this point.

3. It is also contended that there was not sufficient proof of the value of the sheep alleged to have been converted. Fields testified that the old sheep were worth $3 and the lambs $2 a head, and there was evidence on behalf of the plaintiff that such was the price of ordinary stock sheep and yearling lambs at the time of the alleged conversion. All of this evidence, except the testimony of Fields, was stricken out by the court on the ground that it was not proof of the value of the particular sheep in controversy. The plaintiff's theory was, and he offered evidence tending to show, that for some time prior to the alleged settlement in June, 1900, Penland had been in possession of sheep belonging to his testator, under an agreement by which they should each share in the profits and increase thereof; that neither he nor his testator had seen the sheep for some time, and their value, therefore, was

a fact peculiarly within the knowledge of, and susceptible of proof by, the defendant. If such is the fact, and Penland had by the sale put it out of the power of the plaintiff to show the value of his sheep, he or his estate would, we think, be liable for the value of ordinary sheep of the kind claimed by the plaintiff, in the absence of proof by the defendant as to the actual value of the particular sheep in controversy: *Kavanaugh* v. *Taylor*, 2 Ind. App. 502 (28 N. E. 553); *Tea* v. *Gates*, 10 Ind. 164; *Clark* v. *Miller*, 4 Wend. 628; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62. "The principle," says the Supreme Court of New Hampshire, in *Bailey* v. *Shaw*, 24 N. H. 297 (55 Am. Dec. 241), "that a person who has acquired the possession of goods, and who puts it out of the power of the owner to show the quality and value of the property by any artifice or concealment, may be held liable for the value of the best quality of such goods, is well settled." The court below was therefore in error in directing a verdict for the defendant.

4. There is one other assignment of error, based on the ruling of the court in the admission of testimony, that it may be advisable to notice briefly, in view of a new trial. Before the death of Fields, his deposition was taken in pursuance of an order of the court. He testified, among other things, that he had delivered to Penland a band of sheep belonging to him. Counsel for the plaintiff thereupon proposed to read to the jury his answer to the question, "You may state whether or not he retained the possession of the band of sheep from that time until the 1st of June, 1900," but, because of defendant's objection that the question was leading, and did not conform to the pleadings, he was not permitted to do so, and this ruling is assigned as error. The complaint alleges that prior to June 1, 1900, Penland had in his possession a band of sheep, the property of the plaintiff, which he was keeping on shares, and that the alleged settlement was concerning such sheep. It is quite clear, therefore, that it was competent for the plaintiff to give evidence in support of these allegations, as a basis for the accounting and settlement of June 1st, and as tending to

support his contention in reference thereto. There could have been no accounting and settlement, as alleged in the complaint, unless there was some matter between the parties to be settled and adjusted. Evidence was therefore admissible to show that there was an unliquidated and unsettled claim growing out of previous transactions between them: *Smith* v. *Farra*, 21. Or. 395 (28 Pac. 241, 20 ·L. R. A. 115) ; *Easton* v. *Easton*, 112 Mass. 438. Indeed, the competency of the evidence offered is not seriously questioned; but it is sought to estop the plaintiff from insisting upon the alleged error, because on a previous motion of the defendant to strike out a part of the complaint, and also on an application for a continuance, the· plaintiff's counsel had argued, and the court ruled, that the allegation that prior to June 1, 1900, Penland had in his possession sheep belonging to the plaintiff was a matter of inducement, concerning which it would not be competent for either party to give evidence on the trial. Whether this would amount to a waiver of the error is not now important, since the case must be reversed on other grounds, and at another trial either party will have an opportunity to give evidence on this issue.

· For the reasons given, the judgment must be reversed, and a new trial ordered.          REVERSED.