## In Re ANDERSEN'S ESTATE.*
## DE GOLIA *v.* ANDERSEN.
### (188 Pac. 164; 198 Pac. 236.)

**Time—Day Following Entry of Judgment to be Excluded in Computation of Time for Filing and Serving Notice of Appeal.**

1. The day following the entry of a judgment is to be excluded in the computation of time within which notice of appeal may be served and filed, under Section 550, L. O. L., as amended by General Laws of 1913, page 617, and where judgment was rendered and entered on Monday, November 3, 1919, notice of appeal served and filed January 3, 1920, was served and filed in time.

---

*On first and last days in computing time for rendition and docketing of judgment and taking appeal, see notes in 49 L. R. A. 224, 226; 15 L. R. A. (N. S.) 689.      REPORTER.

## ON THE MERITS.

**Appeal and Error—Undertaking on Appeal from County Court, Which is Limited to a Definite Sum, is Insufficient.**

2. An undertaking on appeal from a judgment of the County Court, denying a claim against an estate which was limited to a definite and specified sum, is insufficient, and does not comply with Section 551, Or. L.

**Appeal and Error—Allowance of Amendments to Undertaking on Appeal from County Court Proper.**

3. Where an appeal from a judgment of the County Court, disallowing a claim against an estate, was taken in good faith, and the insufficiency of the undertaking, which was limited to a specified sum, was the result of a mistake, it was proper for the Circuit Court in view of Section 550, subdivision 4, Or. L., despite the filing of a motion to dismiss the appeal, to allow the filing of an amended undertaking complying with Section 551.

**Executors and Administrators—Facts Constituting Claim Against Estate Need not be Averred With Particularity Required in Complaint.**

4. Although a verified claim against the estate of a decedent takes the place of a complaint, the facts constituting the claim need not be stated with the degree of particularity required in a complaint filed in an action at law.

**Executors and Administrators—A Claimant must Recover upon the Claim as Presented.**

5. One making claim against the estate of a decedent must recover, if, at all, upon the claim as presented.

**Partnership—Whether a Partnership Exists is Question for the Court.**

6. Where the facts are undisputed the question whether a partnership exists is one of law for the court.

**Partnership—Person Receiving Money for Automobile Which was not Delivered Held Agent of, Instead of Partner of, Decedent.**

7. One who received from claimant money for an automobile which was never delivered *held* the agent of, instead of the partner of, decedent; it appearing that such person had no interest in the profits, but was employed as agent receiving portion of the profits as compensation for his services.

**Executors and Administrators — Recovery Could be had Against Estate, on Claim of Liability as Partner, on Evidence that Decedent was Liable as Principal.**

8. In a proceeding against the estate of a decedent on account of money paid for an automobile, which was never delivered, where the evidence showed the liability of decedent as principal, it appearing that the one who received the money was his agent, recovery could be had under the verified claim, which alleged a partnership between decedent and the agent receiving the money, the claim in effect alleging that claimant made a contract for the

purchase of an automobile, and that the agent received the money, etc.

**Appeal and Error—Incorrect Instruction Harmless, Where Correct Result was Reached.**

9. Where the estate of decedent was in any event liable as principal, the giving of an incorrect instruction, which predicated liability on the theory that decedent was a partner with the one who in fact was his agent, was harmless.

**Appeal and Error—Exclusion of Evidence Harmless, if Erroneous.**

10. In a proceeding against the estate of the decedent on account of money paid for an automobile which was not delivered, where the verified claim alleged that a relation of partnership existed between decedent and his agent who received the money, *held* that, where claimant had testified that he had previously begun suit against agent, the exclusion of a complaint, alleging that agent was doing business under the name under which decedent did business, was harmless.

**Witnesses—Restriction of Cross-examination, Relating to Immaterial Matters Held not Error.**

11. Where claimant and his wife both testified that she lent him the money which he paid to decedent's agent, it was immaterial whether claimant repaid his wife or not, for in no event could she recover, and hence the restriction of her cross-examination on the question of repayment by claimant was proper.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.

In the matter of the estate of Frederick Andersen, deceased. Proceeding by G. E. De Golia against Charles Andersen, administrator of the estate. From a judgment in favor of the former, the latter appeals. On motion to dismiss appeal. Motion overruled.

OVERRULED.

*Messrs. G. C. & A. C. Fulton,* for the motion.

*Messrs. Norblad & Hesse, contra.*

PER CURIAM.—1. This is a motion to dismiss the appeal. Judgment was rendered and entered on Monday, November 3, 1919; the notice of appeal was served and filed January 3, 1920. It is contended by

respondent that the service and filing is one day late. Respondent cites the following sections of the Code:

"An appeal to the Supreme Court, if not taken at the time of the rendition of the judgment or decree appealed from, or at the time of making the interlocutory order appealed from, shall be taken by serving and filing the notice of appeal *within* sixty (60) days from the entry of the judgment, order or decree appealed from * * ": Section 550, L. O. L., as amended, Gen. Laws, 1913, Chapter 319.

"The time *within* which an act is to be done, as provided in this Code, shall be computed by excluding the first day and including the last, unless the last day falls upon Sunday * * or other nonjudicial day, in which case the last day shall * * be excluded": Section 531, L. O. L.

The method of computing time within which a notice of appeal should be served and filed may be said to have been in a state of uncertainty until the case of *United States Nat. Bank* v. *Shefler,* 77 Or. 579 (143 Pac. 51, 152 Pac. 234), in which case it was held by this court, though not without dissent, that the day following the entry of a judgment was to be excluded in the computation of time.

This rule, having been generally accepted by the profession, will be adhered to, although there are authorities holding a contrary doctrine.

Computing the time according to the rule in the case cited, the appellant is within the statute, and the motion to dismiss will be overruled.

Motion to Dismiss Overruled.

101 Or.—7

Submitted on briefs March 25, affirmed May 17, 1921.

On the Merits.

(198 Pac. 236.)

From Clatsop: James A. Eakin, Judge.

In Banc.

Under date of April 8, 1918, G. E. De Golia, as purchaser, signed a writing addressed to the Elgin Motors Company, Inc. The writing was in substance an order for the delivery of an Elgin automobile for the price of $1,250. The Elgin Motors Company, Inc., acting through C. S. Yates as manager and salesman indorsed upon the paper a written acceptance of the order. The writing may therefore be called a contract whereby the Elgin Motors Company, Inc., agreed to deliver and De Golia agreed to buy an Elgin automobile for the price of $1,250. When De Golia signed the order he paid to C. S. Yates the sum of $20 on the purchase price; and Yates led De Golia to believe that the ordered automobile would be delivered to De Golia at the end of about four weeks. On May 4, 1918, Yates told De Golia that he had "a whole carload of cars," but that he did not have enough money to pay the freight bill. Yates requested De Golia to advance the additional sum of $380 on the price of the automobile ordered by De Golia, and Yates stated that if De Golia would advance such amount "you can have your car to-morrow morning." De Golia informed his wife of the request and after consultation they concluded to comply with Yates' request. De Golia delivered to Yates a check for $36 and at the same time signed a note for $650 payable to the order of "Elgin Motors Co., Inc.," and

directed Yates to go "to the house" and see Mrs. De Golia who would pay him "the balance of the money amounting to $400." When Yates saw Mrs. De Golia she also signed the note and at the same time paid Yates $344 in cash making a total of $400 paid to Yates, which amount together with the note made up the full purchase price of the automobile. Yates failed to deliver the automobile as he had promised. He made excuse after excuse for his failure to deliver the automobile. Notwithstanding repeated promises of delivery Yates never delivered any automobile, and furthermore he not only failed to deliver any automobile but he also refused to return the sum of $400 which had been paid to him.

Frederick Andersen was a resident of Astoria from some time prior to April 8, 1918, until October 26, 1918, when he died. After his death an administrator of his estate was appointed. Claiming that Frederick Andersen and C. S. Yates had been partners doing business under the name of the Elgin Motors Company, Inc., and engaged in buying and selling Elgin automobiles from April 7, 1918, to October 26, 1918, inclusive, G. E. De Golia filed with the administrator of the estate of Frederick Andersen, deceased, a claim for $400. The administrator rejected the claim on December 27, 1918, and thereupon De Golia presented his claim to the County Court for allowance. The county judge disallowed the claim and De Golia immediately appealed to the Circuit Court. A trial by jury resulted in a verdict and judgment in favor of De Golia. The administrator appealed.

AFFIRMED.

For appellant there was a brief presented by *Messrs. Norblad & Hesse.*

For respondent there was a brief prepared and submitted by *Mr. G. C. Fulton* and *Mr. A. C. Fulton*.

HARRIS, J.—The order of the county judge disallowing the claim is dated April 25, 1919. The notice of appeal served and filed by De Golia is dated May 13, 1919. On May 15, 1919, De Golia filed and served an undertaking on appeal obligating him and his two sureties

"to pay all damages and costs which may be adjudged to him on the appeal, not exceeding the sum of $100, to which amount we acknowledge ourselves jointly and severally bound."

2. On September 16, 1919, the administrator filed a motion "for an order dismissing said pretended appeal, no valid appeal having ever been effected from the order of the County Court." This motion was heard in the forenoon of October 24, 1919, and "at the conclusion of the arguments of counsel, the court took the same under advisement." In the afternoon of October 24, 1919, after the motion had been argued to the court and by the court taken under advisement, De Golia served and filed a motion asking for leave to file an amended undertaking on appeal, and with this motion De Golia presented the proposed amended undertaking on appeal under the terms of which De Golia and two sureties "undertake and promise on the part of appellant, that the said appellant will pay all damages and costs which may be adjudged to·him on the appeal." On October 25, 1919, the court, after hearing the two motions, allowed the motion for leave to file the amended undertaking on appeal and disallowed the motion to dismiss the appeal. The undertaking on appeal originally filed by the claimant was limited to a definite and specified sum, and conse-

quently did not comply with Section 551, Or. L., which requires an undertaking "to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal"; and since the undertaking did not comply with the statute it was insufficient: *State ex rel.* v. *McKinmore,* 8 Or. 208; *Sanborn* v. *Fitzpatrick,* 51 Or. 457 (91 Pac. 540); *Sutton* v. *Sutton,* 78 Or. 9 (150 Pac. 1025, 152 Pac. 271); *Rugh* v. *Soleim,* 92 Or. 329, 333 (180 Pac. 930).

3. The administrator contends that the claimant's cross-motion for permission to file an amended undertaking was made too late, for the reason that it was not made until after the motion to dismiss was brought on for argument; and in support of his contention the administrator cites the following early precedents: *Cross* v. *Chichester,* 4 Or. 114; *Alberson* v. *Mehaffey,* 6 Or. 412; *State ex rel.* v. *McKinmore,* 8 Or. 208. The narrow and extremely technical rule announced in the three last-mentioned cases was, especially when viewed in the light of Section 550, subdivision 4, Or. L., without any good or substantial reason to support it; and hence *Cross* v. *Chichester,* 4 Or. 114, and the two cases which followed it were subsequently overruled and the doctrine of those cases no longer prevails: *Elwert* v. *Norton,* 34 Or. 567, 571 (51 Pac. 1097, 59 Pac. 1118); *Fleischner* v. *Bank of McMinnville,* 36 Or. 553, 556 (54 Pac. 884, 60 Pac. 603, 61 Pac. 345); *Ferrari* v. *Beaver Hill Coal Co.,* 54 Or. 210, 213 (94 Pac. 181, 95 Pac. 498, 102 Pac. 175, 1016). See, also, *Mendenhall* v. *Elwert,* 36 Or. 375, 380 (52 Pac. 22, 59 Pac. 805); *Hanley* v. *Stewart,* 54 Or. 38, 40 (102 Pac. 2).

It is manifest that the appeal was taken in good faith and that the insufficiency of the first undertak-

ing on appeal was the result of a mistake; and, ther., fore, the Circuit Court properly denied the motior to dismiss the appeal and rightly permitted the filing of the amended undertaking: *Fildew* v. *Milner*, 57 Or. 16 (109 Pac. 1092); *Sutton* v. *Sutton*, 78 Or. 9, 11 (150 Pac. 1025, 152 Pac. 271); *Steed* v. *Cavanaugh*, 80 Or. 62 (151 Pac. 968); *Hodgson* v. *Curtin*, 90 Or. 105, 107 (166 Pac. 929, 175 Pac. 671).

4. The claim which was presented to the county judge for allowance was drawn upon the theory that Yates and Andersen were partners, and that therefore Andersen was liable for moneys paid to his partner Yates. The verified claim presented by De Golia affirmatively states that Yates and Andersen were partners engaged in buying and selling automobiles and had been doing business under the assumed business name of Elgin Motor Car Company, Inc.; that on April 8, 1918, G. E. De Golia entered into a contract in writing with Yates and Andersen, partners doing business under the name of Elgin Motors Company, Inc., "which said contract was and is in words and figures following": (and then follows a full copy of the writing dated April 8, 1918); that De Golia paid $400 to Yates and Andersen; that Yates and Andersen refused to deliver any automobile and also refused to refund the sum of $400; and that therefore De Golia is entitled to recover from the estate of Andersen the sum of $400. Although the verified claim takes the place of a complaint, the facts constituting the claim need not be stated with the degree of particularity required in a complaint filed in an action at law. The facts constituting a claim against an estate may be averred in general terms; and if the facts show a subsisting liability in favor of the claimant the claim is sufficiently stated: *Wilkes* v. *Cor-*

*nelius,* 21 Or. 348, 350 (28 Pac. 135); *Goltra* v. *Penland,* 42 Or. 18 (69 Pac. 925); 11 R. C. L. 194.

5. Notwithstanding the liberal rule which is followed in determining the sufficiency of a claim presented to an administrator or executor, the trial, whether it be in the County Court or on appeal in the Circuit Court, must be had upon the claim as presented and disallowed by the administrator or executor. The claimant must recover, if he recovers at all, upon the claim as presented: *Wilkes* v. *Cornelius,* 21 Or. 348, 352 (28 Pac. 135).

When at the trial in the Circuit Court the claimant rested, the administrator also rested without offering any evidence; and consequently when the case was submitted to the jury there was no evidence to be considered except the evidence offered by the claimant. After both the claimant and the administrator had rested, the latter moved that the jury be directed to return a verdict for the administrator, for the reason that the claimant had failed to prove that a partnership existed between Yates and Andersen. The court denied the motion for a directed verdict and submitted the cause to the jury.

The court instructed the jury "that the only question involved in the case for your determination is whether or not you believe the testimony of plaintiff introduced before you for the purpose of determining whether or not the relation of partnership existed between" Andersen and Yates at the time De Golia contracted for the automobile and paid the sum of $400.

The court further instructed the jury as follows:

"You have heard the evidence that has been offered in that particular and I instruct you that if that evidence is true, that is sufficient to establish the position or the relationship of partnership between those

parties, but the question for you to determine is whether or not that evidence is true or not, and if you believe it is true, then your verdict should be for the claimant, G. E. De Golia, for the amount of his claim."

The administrator duly excepted to the giving of the foregoing instructions. There was no contradictory evidence.

6. Following the rule that where there is no dispute about the facts, the question as to whether or not a partnership exists is one of law for the court to determine, the court in effect said to the jury:

"It is for you to determine whether the witnesses told the truth; if you find that they did tell the truth then you must as a matter of law conclude that Andersen and Yates were partners and return a verdict for the claimant": *Flower* v. *Barnekoff*, 20 Or. 132, 144 (25 Pac. 370, 11 L. R. A. 149); 20 R. C. L. 849.

7. It now becomes necessary to ascertain whether the facts related by the witnesses created a partnership or other legal relationship. De Golia does not claim that when he signed the contract and paid the money he had been led to believe from outward appearances that Andersen and Yates were partners. De Golia alleges and has attempted to prove that a partnership actually existed between Andersen and Yates.

C. A. Nyquist testified that at some time prior to May 31, 1918 (probably late in April or early in May), Andersen requested him to clean and store an Elgin automobile. The car had been run only a hundred miles. Andersen told Nyquist "to lock it so that nobody could touch it without his permission." This automobile was afterwards delivered to a Mrs.

Lytle. When Andersen told Nyquist to store the automobile the former said:

"Well, I want to store that because I paid the wholesale price on that car and Yates—Yates has taken a couple of deposits on the car, and I want to keep it here for safekeeping."

When asked: "Did he state what arrangements there were between him and Yates?" Nyquist answered:

"Well, he said that he was supposed to get half of the profits. He was supposed to pay the bill of lading on the cars until they got down here and as soon as Yates got the notes fixed up, he was supposed to get half of the profits, to get his money back."

Nyquist was asked the following question:

"You don't know whether Mr. Yates had any ownership or any interest in that car at all, do you? Nyquist answered as follows: Well, not any more than what the doctor [Andersen] told me that he had taken deposits on the car, but the doctor still owned it because he had paid the bill of lading on it."

After Yates had refused either to deliver the automobile or repay the sum of $400, De Golia caused him to be arrested. The grand jury investigated the charge against Yates and among other witnesses the grand jury called Andersen as a witness.

E. C. Judd, who was district attorney in June, 1918, the time of the grand jury investigation, testified that Andersen told the grand jury that Andersen

"advanced the money for the bills of lading and the payment for the cars were to be made to Dr. Andersen, and they divided the profits on the deal. * * His explanation to them of the transaction was, that he put up the money, held the car until Mr. Yates completed the transaction, then the party who Mr. Yates completed the transaction with, Dr. Andersen got the money and Dr. Andersen turned the car over and gave Yates his half of the proceeds."

There was evidence from which the jury could have inferred that Yates had made a contract with Mrs. Lytle and that he had received a deposit from her on the contract. The jury could have inferred also that when Andersen told Nyquist that Yates had taken a couple of deposits on the Elgin automobile stored with Nyquist he meant the deposits paid by De Golia and Mrs. Lytle. Although the jury was warranted in finding that Andersen knew that De Golia had paid $400 to Yates there is not a syllable of evidence, except the evidence already mentioned, upon which to base a finding that Andersen had personally received any of the money paid to Yates. The charges made by Nyquist for cleaning and storing the automobile were paid by Andersen. There is no evidence that Yates at any time paid any money to any person for anything. Andersen paid the bill of lading for every Elgin automobile received at Astoria. Every one of such automobiles, from the moment that Andersen paid the bill of lading, was the property of Andersen and continued to be his property until delivered to a purchaser. When Yates procured a purchaser, Andersen received and kept whatever amount was necessary to reimburse him for what he had paid for the automobile and then Andersen divided the net profits with Yates. Until delivered to the purchaser the automobile belonged to Andersen and Yates did not own any interest in it. All expenses, so far as is disclosed by the record, were paid by Andersen. The relation of principal and agent and not that of partners was created. The arrangement between Andersen and Yates was one whereby Yates rendered services as agent for a compensation which was to be measured by one half of the profits. Yates had no interest in the business or

power as a member of a firm and no interest in the profits as such, but he was employed as an agent and received a proportion of the profits as compensation. for his services: *Flower* v. *Barnekoff,* 20 Or. 132, 144 (25 Pac. 370, 11 L. R. A. 149); *Bradley* v. *White,* 10 Met. (Mass.) 303 (43 Am. Dec. 435); *Bradley* v. *Eley,* 24 Ind. App. 2 (56 N. E. 44, 79 Am. St. Rep. 251); 20 R. C. L. 834. See, also, *Northwestern Transfer Co.* v. *Investment Co.,* 81 Or. 75, 79 (158 Pac. 281).

8, 9. The verified claim which, as previously stated, takes the place of a complaint in an action at law, relates the execution of the contract of April 8, 1918; and then, after setting out a copy of the contract, the claim alleges:

"That upon the execution of such contract, and in accordance with the terms thereof, your petitioner duly paid to said Yates and Andersen the sum of $400 which was then and there received by said Yates and Andersen."

In other words, the verified claim shows that the claimant made a contract with the Elgin Motors Company, Inc., and that the latter was represented by C. S. Yates. The verified claim alleges that the relationship between Yates and Andersen was that of a partnership. If the Elgin Motors Company, Inc., was the business name of the partnership, then Andersen is liable for the $400 paid to Yates because each partner is an agent of the other. If the Elgin Motors Company, Inc., was merely the business name under which Andersen did business as an individual, he is nevertheless liable because Yates was unquestionably acting as the agent of Andersen. We must presume that the jury obeyed the instructions of the court; and in view of the instructions given by the court and the verdict returned by the jury, we must

assume that the jury found that the facts were as stated by the witnesses. The facts, as related by the witnesses, imposed a liability upon Andersen, whether the relation between Andersen and Yates was that of principal and agent or that of partners. From the disclosed facts claimant and the circuit judge drew the conclusion of law that a partnership existed; but our conclusion is that the only relationship created was that of principal and agent. This amounted to the giving of a wrong reason for a correct conclusion; and hence the administrator was not injured.

10. The administrator offered in evidence as a part of the cross-examination of G. E. De Golia, the original complaint filed by De Golia in the Circuit Court for Clatsop County in an action brought by him on July 30, 1918, against C. S. Yates, "doing business under the name and style of Elgin Motor Car Company, Inc." In that complaint De Golia alleged that Yates was engaged in the automobile business "under the assumed business name of Elgin Motor Car Co., Inc."; that the contract of April 8, 1918, was made by Yates doing business under such assumed business name and that De Golia was entitled to recover from Yates the sum of $400 which he had paid to Yates as a deposit on the automobile contracted for.

When the complaint was offered in evidence, counsel for the administrator stated that he was making the offer for the purpose of showing "that he sued C. S. Yates, doing business under the name and style of Elgin Motor Car Company." The record shows that De Golia had previously testified on cross-examination and without objection that he "began suit against Yates on this same matter some time in July"; and hence counsel for the administrator had already accomplished the purpose for which he stated

he was offering the complaint. In the printed brief the administrator assigns additional reasons and says that the complaint was competent to discredit De Golia's contention that C. S. Yates was a partner " and also for impeachment purposes.". These additional reasons were not called to the attention of the trial court at the time of making the offer; and, moreover, De Golia had not testified upon his direct examination, except remotely, concerning any relationship between Andersen and Yates. At any rate we do not think the administrator suffered any injury on account of the ruling of the court, even though it be assumed that the complaint was competent as evidence in behalf of the administrator. The jury knew from the answer given by De Golia that he had sued Yates in July, 1918, for the same money which he was seeking subsequently to recover from the estate of Andersen.

11. It will be remembered that Mrs. De Golia paid Yates $344 in cash. On direct examination she stated that this money was her money and that she had paid it to Yates at the request of her husband. On cross-examination she testified that she gave or loaned this money to her husband. After she had been cross-examined at some length about whether or not the $344 paid to Yates was her money and as to whether or not her husband had repaid the money to her, the court upon objection of the claimant refused to prevent the administrator to cross-examine her any further upon those matters. The administrator now contends that he should have been permitted to prolong the cross-examination, for the reason that he expected to develop the fact that this sum of $344 belonged to Mrs. De Golia. The administrator was not injured by the ruling of the court. Mrs De Golia

testified that she paid the money at the request of her husband; and it makes no difference whether it was her money or his money and it is utterly immaterial whether he has or has not repaid it to her. She says she gave or loaned it to her husband. In view of the facts disclosed by the record Mrs. De Golia cannot in any possible situation compel the administrator to pay her $344. The judgment recovered by G. E. De Golia completely protects the administrator from any claim that Mrs. De Golia might assert.

The facts found by the jury show that Yates was the duly authorized agent of Andersen; and therefore the estate of the latter is liable for moneys received by Yates while acting within the scope of his agency.

The judgment is affirmed.

                    AFFIRMED.    REHEARING DENIED.